**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Ryan Phillip Schlesinger,

Defendant.

No. CR-18-02719-TUC-RCC (BGM)

**ORDER**

Pending before the Court are four motions filed by Defendant Ryan Phillip Schlesinger. He moves to dismiss the Government's notice of intent to seek the death penalty on the grounds that the Federal Death Penalty Act ("FDPA") is unconstitutional. (Doc. 247.) He also moves to strike the future dangerousness non-statutory aggravating factor (Doc. 245), the victim impact non-statutory aggravating factor (Doc. 246), and the substantial planning and premeditation statutory aggravating factor (Doc. 248). The Government opposes the motions. (Docs. 297, 299–301.) The Court heard oral argument on August 3, 2021. For the reasons set forth below, the Court denies all motions.

## I.    Background

On November 30, 2018, a complaint was filed against Schlesinger charging him with the premeditated killing of Deputy United States Marshal C.W. in violation of 18 U.S.C. §§ 1111 and 1114. (Doc. 1.) C.W. was part of a task force sent to serve Schlesinger with a felony arrest warrant at his residence on November 29, 2018. (*Id.*) Schlesinger

opened fire on the agents, striking and killing C.W. (*Id.*) Schlesinger was arrested shortly thereafter. (*Id.*)

The Government filed a superseding indictment ("Indictment") on September 30, 2020, charging Schlesinger with two death-penalty-eligible counts: first-degree murder of a federal officer in violation of 18 U.S.C. §§ 1111(a) and 1114 (Count One) and the use of a firearm during and in relation to a crime of violence causing the Marshal's death in violation of 18 U.S.C. §§ 924(c)(1)(A) & (j) (Count Nine). (Doc. 192 at 1–5.)

The grand jury alleged additional special findings in conformity with the FDPA, *see* 18 U.S.C. § 3591 *et seq.*, charging that Schlesinger was at least 18 years old at the time of each offense under 18 U.S.C. § 3591(a) and possessed all four guilty states of mind under § 3591(a)(2)(A) through (D) (gateway intent factors). (*Id.* at 6.) The grand jury also charged him with three statutory aggravating factors under § 3592(c)(9), including "substantial planning and premeditation." *Id*. The Indictment does not allege any non-statutory aggravating factors. (*See id.*)

The Government filed a Notice of Intent ("Notice") to seek a sentence of death in the event of a conviction on either Count One or Count Nine. (Doc. 194 at 1.) In the Notice, the Government alleged two non-statutory aggravating factors: victim impact and future dangerousness, in addition to the statutory aggravating factors alleged in the indictment as the basis for the imposition of the death penalty.

Schlesinger challenges the constitutionality of the FDPA and moves to strike the non-statutory aggravating factors and the substantial planning and premeditation statutory aggravating factor.

## II.    Motion to Dismiss

The Court will first consider Schlesinger's motion to dismiss. (Doc. 247.) His primary argument is that the FDPA is unconstitutional on its face because it does not mandate that a grand jury make a finding as to probable cause on all of the aggravating factors. He alleges this violates the Fifth Amendment's Indictment Clause and *Ring v. Arizona*, 536 U.S. 584 (2002), as well as the Separation of Powers doctrine. (Doc. 247 at

3–13.) Alternatively, he asks this Court to strike the special findings and dismiss the Notice because the Indictment violates the Fifth and Sixth Amendments. *Id*. at 13–22.

### A. The Facial Claim Against the FDPA

#### 1. Schlesinger's Burden and the Presumption of Constitutionality

Schlesinger bears the burden of proving the FDPA invalid on its face. *See United States v. Sampson*, 486 F.3d 13, 20 (1st Cir. 2007) (explaining that "the burden of proving that the FDPA is unconstitutional is on the challenger. . . .") (citations omitted). "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Court presumes that an Act of Congress is constitutional. *United States v. Morrison*, 529 U.S. 598, 607 (2000) (citations omitted); *see also Gregg v. Georgia*, 428 U.S. 153, 175, 187 (1976) (plurality opinion) ("[I]n assessing a punishment selected by a democratically elected legislature against the constitutional measure, [courts] presume its validity.").

#### 2. *Ring*'s Impact on the FDPA

If Schlesinger is convicted of a death-qualifying offense, a separate penalty phase hearing will be conducted to determine punishment. *See* 18 U.S.C. § 3593(b). At this hearing, the parties may submit information "as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered." 18 U.S.C. § 3593(c). For a defendant to become eligible for a death sentence, a jury must unanimously find, beyond a reasonable doubt, that:

1) the defendant was at least 18 years old at the time of the crime, 18 U.S.C. § 3591(a);
2) he had at least one gateway intent factor, § 3591(a)(2); and
3) at least one statutory aggravating factor exists, § 3592(c).

*See United States v. Mitchell (Lezmond)*, 502 F.3d 931, 973 (9th Cir. 2007).

Upon a finding of eligibility, the jury then determines the propriety of a death sentence. First, it determines whether non-statutory aggravating factors and mitigating circumstances exist. 18 U.S.C. § 3592(a) and (c). Next, it weighs all of the proven

aggravating and mitigating factors. To justify a death sentence, the jury must determine that the aggravating factors "sufficiently outweigh" the mitigating circumstances. 18 U.S.C. § 3593(e). The jury must "unanimous[ly] . . . recommend whether the defendant should" receive a death sentence. *Id*.

The role of the petit jury under the FDPA conforms with *Ring*. In *Ring*, the Supreme Court held that under the Sixth Amendment a jury—not a judge—must determine whether at least one alleged statutory aggravating factor exists. 536 U.S. at 609 (striking down Arizona's death-sentence statute). The Court reasoned that these factors "operate as 'the functional equivalent of an element of a greater offense'" and that the jury must find such elements beyond a reasonable doubt. *Id*. (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19 (2000)).

The role of the grand jury after *Ring*, however, is less clear. Ring did not protest the aggravating factors' absence from an indictment. *Id*. at 597 n.4. And, as the Court observed in *Ring*, the jury trial guarantee recognized in *Apprendi* had not "been construed to include the Fifth Amendment right to 'presentment or indictment of a Grand Jury.'" *Id*. at 597 n.4 (citing *Apprendi*, 530 U.S. at 477 n.3).

The Ninth Circuit has not addressed whether *Ring* extends to the gateway intent factors or statutory aggravating factors. However, "other circuits have unanimously" held that *Ring* "applies with equal force in the context of a Fifth Amendment challenge" to both. *United States v. Brown*, 441 F.3d 1330, 1367 (11th Cir. 2006); *see also United States v. Lawrence*, 735 F.3d 385, 420 (6th Cir. 2013); *Sampson*, 486 F.3d at 21; *United States v. Allen (Billie)*, 406 F.3d 940, 949 (8th Cir. 2005); *United States v. Robinson*, 367 F.3d 278, 284 (5th Cir. 2004); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003); *United States v. Quinones*, 313 F.3d 49, 53 n.1 (2d Cir. 2002).

In essence, the gateway intent factors and statutory aggravating factors are "element[s] of a greater offense. . . ." *Ring*, 536 U.S. at 609 (quoting *Apprendi*, 530 U.S. at 494 n.19). Such "elements must be charged in the indictment. . . ." *Jones (Nathaniel) v. United States*, 526 U.S. 227, 232 (1999) (citations omitted). Accordingly, this Court finds

that the gateway intent factors and statutory aggravating factors must be charged in the indictment.

### 3. Facial challenge under the Fifth Amendment's Indictment Clause

Schlesinger claims that the FDPA is invalid on its face under the Fifth Amendment's Indictment Clause and *Ring* as it "neither permits nor contemplates affording the grand jury any role in determining which aggravating factors are to be alleged in a federal prosecution." (Doc. 247 at 4.) Schlesinger asserts that the FDPA forbids grand juries from indicting defendants with the gateway intent factors and statutory aggravating factors because it expressly requires the Government to "sign and file with the court, and serve on the defendant, a notice" that it intends to seek a death sentence, listing aggravating factors that it plans "to prove as justifying" that sentence. 18 U.S.C. § 3593(a)(1) and (2). He maintains therefore that "Congress elected to enact a scheme where the decision to set death in motion would be reserved to the government's attorneys and no one else—not grand juries, not the Court, and not any other individual or entity." (Doc. 247 at 6.)

The Court disagrees. The FDPA does not prevent the Government from alleging the gateway intent factors or statutory aggravating factors to a grand jury, nor does it prevent the grand jury from indicting defendants with those factors. The Ninth Circuit rejected such a challenge to the FDPA in *Mitchell (Lezmond)*, where, as here, the indictment *did* charge statutory aggravating factors upon which the government proceeded. 502 F.3d at 979 (citing *Brown*, 441 F.3d at 1367; *Robinson*, 367 F.3d at 290). While "nothing in the FDPA requires prosecutors to charge aggravating factors in an indictment . . . there is nothing in that law inhibiting such a charge." *Robinson*, 367 F.3d at 290; *see also Brown*, 441 F.3d at 1367 ("Nothing prohibits the government from presenting aggravating factors to a grand jury and then, if appropriate, charging those aggravating factors in the indictment."). As a result, the Court agrees with Schlesinger's assertion that "the government does not need to present aggravating factors to the grand jury in an indictment" to satisfy the FDPA (Doc. 247 at 7), but disagrees with his argument that the "FDPA is unconstitutional because it requires aggravating factors be alleged exclusively in a manner that *precludes* presentation

1   to the grand jury." (Doc. 247 at 12) (emphasis added). The Government can "easily comply

2   with both its constitutional obligations (by first going to the grand jury) and its statutory

3   obligations (by later filing a § 3593(a) notice of intention to seek the death penalty)."

4   *Robinson*, 367 F.3d at 290.

5         *Mitchell (Lezmond)* controls here. Schlesinger's argument fails because the

6   Government alleged gateway intent factors and statutory aggravating factors to a grand

7   jury, and the grand jury indicted Schlesinger with them. (*See* Doc. 192, at 6)

8         No other Circuit has ruled contrary to *Mitchell (Lezmond)*, *Brown*, or *Robinson*. *See*

9   *United States v. Barnette*, 390 F.3d 775, 788–90 (4th Cir. 2004) (noting that the FDPA's

10  legislative history does not show "any . . . intent" to bar the government "from submitting

11  aggravating factors to the grand jury"), *vacated on other grounds*, 546 U.S. 803 (2005);

12  *Sampson*, 486 F.3d at 21 (finding courts have "uniformly rejected" this facial challenge

13  and that there is "no irredeemable conflict between the FDPA and *Ring*"); *Allen (Billie)*,

14  406 F.3d at 949 .

15              4.    Facial Challenge under the Separation of Powers Doctrine

16        Schlesinger next asserts that the FDPA, by explicitly "reserving selection and notice

17  of aggravating factors to the exclusive discretion of the prosecution," is contrary to

18  Congress's power "to define federal criminal offenses and punishment." (Doc. 247 at 6–

19  7.)

20        The Supreme Court described this doctrine in *Mistretta v. United States*, 488 U.S.

21  361 (1989). The Court explained that it has "long . . . insisted that 'the integrity and

22  maintenance of the system of government ordained by the Constitution' mandate that

23  Congress generally cannot delegate its legislative power to another Branch." *Id.* at 371–72

24  (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 692 (1892)). This doctrine "is rooted

25  in the principle of separation of powers that underlies our tripartite system of Government."

26  *Mistretta*, 488 U.S. at 371.

27        Schlesinger mischaracterizes the language of § 3593(a), which lays out the

28  mandated steps before a "special hearing to determine whether a sentence of death is

justified," including the filing of the Notice. The Court rejects the premise of Schlesinger's separation of powers argument. The FDPA does not explicitly reserve the selection and notice of aggravating factors to the exclusive discretion of the prosecution. As previously explained, there is nothing in the FDPA that prohibits the Government from presenting the aggravating factors to a grand jury. *Brown*, 441 F.3d at 1367.

That said, even if § 3593(a) were a delegation of legislative power, the Supreme Court has acknowledged that the nondelegation doctrine does not bar Congress from finding help from "its coordinate Branches." *Mistretta*, 488 U.S. at 372. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)) (brackets added by the *Mistretta* Court).

In *Mitchell (Lezmond)*, the Ninth Circuit assumed that § 3592(c) was a delegation of power but upheld it by finding intelligible principles:

> [T]here are a number of limitations on the government's power to pursue non-statutory aggravators, including that the defendant must have been given notice of the factor, *see* 18 U.S.C. § 3592(c); that the Supreme Court has articulated several constitutional limitations on the use of aggravating factors; that "the district court functions as a gatekeeper to limit the admission of useless and impermissibly prejudicial information"; and that "the jury find at least one statutory aggravating factor beyond a reasonable doubt before it may consider the nonstatutory factors."

502 F.3d at 979 (quoting *United States v. Jones (Louis)*, 132 F.3d 232, 239–40 (5th Cir. 1998)). "These safeguards" suffice to curb "the prosecutor's power"—constitutionalizing "the delegation of discretion to charge" non-statutory aggravating factors. *Lawrence*, 735 F.3d at 419 (citing *Mitchell (Lezmond)*, 502 F.3d at 979; *Higgs*, 353 F.3d at 321–22; *United States v. Paul*, 217 F.3d 989, 1003 (8th Cir. 2000); *Jones (Louis)*, 132 F.3d at 239–40). Schlesinger's claim as to non-statutory aggravating factors therefore lacks merit under *Mitchell. See Day v. Apoliona*, 496 F.3d 1027, 1031 (9th Cir. 2007); *see also Lawrence*,

735 F.3d at 419 (emphasizing that all other courts that have considered such non-delegation claims have rejected them). On the other hand, the statutory aggravating factors themselves are clearly non-delegated as they are necessarily Congressionally formulated and require no finding of "intelligible principles" to justify their use.

Schlesinger contends that the analysis in *Mitchell (Lezmond)*, *Robinson*, and *Brown* is "flawed" because the courts did not address *United States v. Jackson*, 390 U.S. 570 (1968). (Doc. 247 at 7–13.) As courts have consistently found, *Jackson* is readily distinguishable from cases involving the FDPA.

*Jackson* addressed an unconstitutional provision of the Federal Kidnapping Act according to which only a jury could impose a death sentence, thereby violating a defendant's right to a jury trial. 390 U.S. at 572–73. The Court held that the government's proposed solution—convening a "special jury" to determine whether death was warranted—could not save the statute. *Id.* The Court explained:

> It is one thing to fill a minor gap in a statute—to extrapolate from its general design details that were inadvertently omitted. It is quite another thing to create from whole cloth a complex and completely novel procedure and to thrust it upon unwilling defendants for the sole purpose of rescuing a statute from a charge of unconstitutionality.

*Id.* at 580.

A novel and complex solution created from "whole cloth" is not needed to render the FDPA constitutional. "Although the FDPA itself may be silent regarding the role of the grand jury, . . . 'the role of the grand jury in charging the elements of an offense has long been established.'" *United States v. Mills (Edwin)*, 393 F.Supp.3d 650, 662 (E.D. Mich. 2019) (quoting *Sampson*, 486 F.3d at 22); *see also United States v. LeCroy*, 441 F.3d 914, 921 (11th Cir. 2006) ("It is simply well-established law—the background against which statutes are enacted—which indicates that elements of a crime should be submitted to the grand jury).

In contrast to the proposed means of saving the statute in *Jackson*, permitting a grand jury to consider and charge statutory aggravating factors does not affect the FDPA's "substantive aspects" or the "discrete roles that [it] assigns to the judge, the prosecutor, and

the jury, respectively." *Sampson*, 486 F.3d at 23; *see also Mills (Edwin)*, 393 F.Supp.3d at 661–62 (explaining that, by alleging statutory aggravating factors to a grand jury and indicting the defendant with them, the Government ensures compliance with the Indictment Clause without breaching the FDPA's plain wording); *see also United States v. Arnold*, No. 15-20652-01, 2019 WL 3801598, *5 (E.D. Mich. Aug. 13, 2019) (stressing that "courts are not amending the FDPA" to save it but instead are "complying with the Fifth Amendment"). By extension, this reasoning also applies to the gateway intent factors. Therefore, the Court holds that Schlesinger has not met his burden to prove the FDPA invalid on its face.

### B.    Request to Strike Special Findings and Dismiss the Notice

Schlesinger asks the Court to strike the Indictment's Special Findings and the Notice as violations of the Indictment Clause. He raises three arguments: the grand jury was not told the consequences of the "special findings"; the non-statutory aggravating factors are absent from the indictment; and the grand jury did not find that the aggravating factors outweighed the mitigating factors. (Doc. 247 at 14–22.) These arguments fail.

### 1.    Consequences of the Special Findings

Schlesinger asserts that the grand jury was unaware that by returning an Indictment with "special findings," Schlesinger "would be held to answer to an offense punishable by death." (Doc. 247 at 15.) Because the Indictment Clause does not require that the prosecutor inform the grand jury of the consequences of their special findings, this argument is without merit.

The role of a grand jury is to make an "independent *factual* determination of the existence of probable cause for the *essential elements* of the charged offense"—not "to decide whether probable cause supports the imposition of a particular *sentence*. . . ." *Mills (Edwin)*, 393 F.Supp.3d at 665 (quoting *United States v. Haynes*, 269 F.Supp.2d 970, 981 (W.D. Tenn. 2003)) (emphasis in original); *see also* Fed. R. Crim. P. 7(a) and (c) (defining a passable indictment). The Fifth Amendment therefore does not require that the grand jury know "of the potential punishment arising out of the grand jury's special findings." *Id.*; *see*

*also United States v. Troya*, No. 06-80171-CR, 2008 WL 4327004, at *8 (S.D. Fla. Sept. 22, 2008) ("[T]he case law is clear that there is no constitutional requirement that the grand jury be informed of the potential punishment arising out of the Special Findings."); *United States v. Green*, No. 5:06CR-19-R, 2008 WL 4000902, at *6 (W.D. Ky. Aug. 26, 2008) ("Prosecutors are not required to inform a grand jury that the decision to return 'special findings' as to aggravating factors will make a defendant eligible for capital punishment"); *United States v. Lecco*, No. 2:05-00107-01, 2007 WL 1074775, at *3 (S.D. W. Va. Apr. 5, 2007) (same).

A sufficient indictment "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). The grand jury here fulfilled its constitutional role in determining whether probable cause existed to charge Schlesinger for the crimes in the Indictment, including the specified gateway-intent and aggravating factors. *See id.* The Indictment satisfies the purposes of the Fifth Amendment: notice and sufficient information to bar subsequent prosecutions in the event of acquittal or conviction. *See id.* The Indictment is not deficient even if the grand jury was not informed that Schlesinger could face the death penalty as a result of the charges.

To hold otherwise would risk tainting the grand jury's status as a neutral body that finds whether probable cause supports the essential elements of a crime. *See United States v. Matthews*, 246 F.Supp.2d 137, 147 (N.D.N.Y. 2002) ("Grand juries do not make findings or recommendations concerning punishment or sentencing and such considerations should not influence their decision. It is for the petit jury to make that determination."). Here, the Government alleged the predicate crimes (Counts 1 and 9), the gateway intent factors, and the statutory aggravating factors to the grand jury. (*See* Doc. 192.) The grand jury found that all three existed. *Id.* On that basis, the grand jury served its purpose as a check on the Government. *See Haynes*, 269 F.Supp.2d at 981.

The cases cited by Schlesinger do not support his position because they do not suggest that grand juries must be informed about the sentences that defendants might face. Rather, they refer to the sentencing constraint established by the facts alleged in the indictment by the grand jury together with the facts found by the petit jury: a "strong and two-fold-barrier . . . between the liberties of the people and the prerogative of the [government]." *Harris v. United States*, 536 U.S. 545, 564 (2002) (quoting *Duncan v. Louisiana*, 391 U.S. 145, 151 (1968) (emphasis and alterations in original) ), *overruled on other grounds by Alleyne v. United States*, 570 U.S. 99, 103 (2013); *see also Campbell v. Louisiana*, 523 U.S. 392, 398–99 (1998); *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986).

Schlesinger cites *Smith (Johnny) v. United States*, 360 U.S. 1, 9 (1959), for example, where the government bypassed the grand jury altogether and proceeded on an information after the defendant waived his right to indictment. The "precise question at issue" in *Smith* was whether the defendant's alleged violation of the FKA had to be prosecuted by indictment because it was a capital crime. *Id.* at 6. The Supreme Court answered that question in the affirmative. *Id.* at 10. Whether the grand jury needed to be informed of the capital nature of the offense was not at issue in the case, and thus *Smith* does not help Schlesinger here.

### 2. Non-Statutory Aggravating Factors

Schlesinger also asserts that the non-statutory aggravating factors alleged in the Notice should be dismissed because they are absent from the Indictment. (Doc. 247 at 19–22.) *Mitchell (Lezmond)* holds that "nothing . . . suggest[s] that this is constitutionally required" because "[a] non-statutory aggravating factor by itself cannot trigger death eligibility." 502 F.3d at 979 (citing *LeCroy*, 441 F.3d at 922; *Brown*, 441 F.3d at 1368). On this basis, Schlesinger's objection lacks merit.

Schlesinger asks this Court to disregard *Mitchell (Lezmond)* "because it failed to provide any analysis or consider the Fifth Amendment's requirements." (Doc. 247 at 19.) To the contrary, the Ninth Circuit explained why statutory aggravating factors—unlike non-statutory factors—must be charged in an indictment: "The rationale underlying the

requirement that statutory aggravating factors be charged is that the existence of at least one is a prerequisite to increasing a defendant's sentence from life imprisonment." *Mitchell (Lezmond)*, 502 F.3d at 979.

Along with that explanation, the Ninth Circuit cited *LeCroy* and *Brown*. In *LeCroy*, the Eleventh Circuit explained that it was "not the first court to have faced this issue." 441 F.3d at 922. It noted, for instance, that the Fourth Circuit had held that non-statutory aggravating factors need not be included in the indictment because they did not, "and cannot by themselves, increase the available punishment." *Id.* (citing *Higgs*, 353 F.3d at 298–99). "[I]f one statutory aggravator was included in the indictment and found by the jury, then '[a]ny additional statutory or nonstatutory aggravating factors may be fairly viewed as sentencing considerations.'" *Id.* (quoting *Higgs*, 353 F.3d at 299). The *Lecroy* court noted that the Fifth Circuit "reach[ed] the same conclusion" in *United States v. Bourgeois*, 423 F.3d 501, at 507–08 (5th Cir. 2005). *Id.* The court found *Higgs* and *Bourgeois* persuasive and held that the absence of non-statutory aggravating factors from an indictment "does not violate the requirements of the relevant case law, and does not constitute constitutional or statutory error." *Id.*

"Other circuits have done the same." *Brown*, 441 F.3d at 1368 (citing *United States v. Purkey*, 428 F.3d 738, 749–50 (8th Cir. 2005); *Bourgeois*, 423 F.3d at 507–08; *Higgs*, 353 F.3d at 298–99). The *Brown* court agreed that non-statutory aggravating factors are "relevant to determining whether a jury *decides* to impose the death penalty" but do not "make a defendant statutorily eligible for any sentence that could not be otherwise imposed in their absence." *Id.* "They are neither sufficient nor necessary under the FDPA for a sentence of death." *Id.* (quoting *Purkey*, 428 F.3d at 749). The court concluded that non-statutory aggravating factors—factors comprised of facts not "legally essential to the punishment"—need not be contained in an indictment. *Id.* (quoting *Blakely v. Washington*, 542 U.S. 296, 313 (2004)).

Other courts agree. *See United States v. Allen*, 247 F.3d 741, 759 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002)); *United States v. Smith*, 378 F.Supp.3d

790, 796 (D. Alaska 2019); *United States v. George*, No. CR 17-201, 2019 WL 343186, *4 n.17 (E.D. La. Jan. 28, 2019) (citing cases holding that non-statutory aggravating factors are not elements of a crime).

Schlesinger cites *United States v. Green (Darryl)*, 372 F.Supp.2d 168 (D. Mass. 2005), where the district court held that the non-statutory aggravating factor "prior unadjudicated crimes" must be presented to a grand jury, and *United States v. Mills (Barry)*, 446 F.Supp.2d 1115, 1135 (C.D. Cal. 2006), where the district court, citing *Ring*, described non-statutory aggravating factors as involving "constitutionally significant factfinding" for Confrontation Clause purposes. (Doc. 247 at 19–21.) These decisions are not persuasive because they run counter to the authority discussed above, which without exception holds that non-statutory aggravating factors need not be alleged in the indictment or presented to a grand jury. *See, e.g.*, *United States v. Pleau*, CR. No. 10-184-1 S., 2013 WL 1673109, *2 n.2 (D.R.I. Apr. 17, 2013) (finding *Green (Darryl)* and *Mills (Barry)* unpersuasive because they are "inconsistent with" and "conflict[] with the clear consensus of federal courts of appeal").

### 3.   The Weighing of the Competing Factors

Schlesinger asserts the Notice should be dismissed because the Government did not present all the elements necessary for the grand jury to make the decision as to whether he should be subject to the death penalty. (Doc. 247 at 18.) Specifically, he argues that the grand jury should determine whether the aggravating factors outweigh the mitigating factors, and if so, if they outweigh them sufficiently to justify a sentence of death. (*Id.*)

As just discussed, non-statutory aggravating factors are relevant to the sentence selection decision but not to eligibility and therefore need not be charged in the indictment and presented to the grand jury. Likewise, "because the weighing determination of both statutory and non-statutory aggravating factors with mitigating factors is also part of the sentence selection decision—not the eligibility decision—it logically follows that it, too, does not have to be presented to the grand jury and charged in the indictment." *Mills (Edwin)*, 393 F.Supp.3d at 663; *see also United Sates v. Talik*, No. 5:06CR51, 2007 WL

4570704, at *3 (N.D. W.Va. Dec. 26, 2007) (explaining that the weighing task "is not a determination that could increase the maximum sentence for which the defendant is eligible").

In fact, "it makes no sense to speak of the weighing process mandated by 18 U.S.C. § 3593(e) as an elemental fact for which a grand jury must find probable cause." *Purkey*, 428 F.3d at 750. Instead, "it is a 'consideration' . . . — that is, the lens through which the jury must focus the facts that it has found to produce an individualized determination regarding 'whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.'" *Id.* (quoting 18 U.S.C. § 3593(e)); *see also United States v. Runyon*, 707 F.3d 475, 516 (4th Cir. 2013) (agreeing that the weighing process "constitutes not a factual determination, but a complex moral judgment"); *United States v. Fields (Sherman)*, 483 F.3d 313, 346 (5th Cir. 2007) (holding that "the jury's decision that the aggravating factors outweigh the mitigating factors is not a finding of fact" but rather a "'highly subjective,' 'largely moral judgment'") (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 340 n.7 (1985)).

In addition, a grand jury cannot perform the weighing task, as it will not have access to the defendant's alleged mitigating factors. *See Mitchell (Lezmond)*, 502 F.3d at 993–94 (deeming claim that the jury must find that aggravating factors outweigh mitigating factors beyond a reasonable doubt "flaw[ed]" because "the corollary obligation under the Fifth Amendment would presumably be triggered, and the 'fact' that aggravating factors outweigh mitigating factors would need to be found by the grand jury and charged in the indictment" and "*of course the grand jury has no way of knowing what mitigating factors the defendant will urge*") (emphasis added); *see, e.g.*, *Higgs*, 353 F.3d at 299 ("There is no requirement that the indictment allege *all* of the factors that might be weighed by the jury when deciding whether to impose a death sentence").

The Court will not strike the Notice of Special Findings or dismiss the Notice. The Superseding Indictment is satisfactory. *See Hamling*, 418 U.S. at 117.

Schlesinger's Motion to Dismiss (Doc. 247) is therefore denied.

- 14 -

1

2

3

## III.   Motion to Strike Future Dangerousness Factor

Schlesinger moves to strike the future dangerousness aggravating factor. (Doc. 245.) The motion will be denied.

4

5

6

7

8

In its Notice, the Government alleged as a non-statutory aggravating factor that Schlesinger "poses a continuing danger to others in that he is likely to commit criminal acts of violence in the future that would constitute a continuous and serious threat to the lives and safety of others." (Doc. 194 at 3.) To show that Schlesinger poses such a danger, the Government alleges the existence of the following sub-factors:

9

10

11

**a. History of antagonism and threatening behavior.** Schlesinger has engaged in a continuous pattern of antagonist[ic] and threatening behavior towards law enforcement and persons in positions of authority including repeated threats of violence and stalking.

12

13

14

**b. Continuing pattern of violence.** Schlesinger has engaged in a continuing pattern of violence, threatened violence, and attempted violence, including but not limited to the crimes alleged in the Superseding Indictment.

15

16

17

**c. Lack of remorse.** Schlesinger has demonstrated a lack of remorse for the murder of Deputy United States Marshal C.W, as evidenced by his statements and actions during the course of and following the commission of the offense.

18

(*Id*. at 3–4.)

19

20

21

22

23

24

Schlesinger moves to strike this aggravating factor under the Fifth and Eighth Amendments. (Doc. 245 at 2.) He contends that (A) predictions of future dangerousness are unreliable; (B) the factor is unconstitutionally vague; and (C) the term "likely" dilutes the Government's burden to prove the aggravating factor beyond a reasonable doubt. (*Id*. at 4–14.) He also objects to the admission of evidence of his antagonistic and threatening behavior and lack of remorse. (*Id*. at 14–16.)

25

### A.   *Unreliability*

26

27

28

"The Eighth Amendment insists upon 'reliability in the determination that death is the appropriate punishment in a specific case.'" *Oregon v. Guzek*, 546 U.S. 517, 525 (2006) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 328 (1989)). With that principle in mind,

1   Schlesinger claims that predictions about one's future dangerousness are unreliable. (Doc.

2   245 at 4–12.) He cites various studies purporting to show the unreliability of juries'

3   predictions of future dangerousness. (Doc. 245 at 6–10.) Schlesinger's arguments fail in

4   the face of Supreme Court precedent, including *Jurek v. Texas*, 428 U.S. 262 (1976), and

5   *Barefoot v. Estelle*, 463 U.S. 880, 896–97, 906 (1983).

6          In *Jurek*, the Court considered whether a sentence of death under Texas law violated

7   the Eighth and Fourteenth Amendments. *Id.* at 264. A Texas court sentenced Jurek to death

8   after a jury had found him guilty of murder and determined "that there was a probability

9   that" he would commit violent crimes "that would constitute a continuing threat to society."

10  *Id*. at 267–68. Jurek challenged the latter finding as unreliable. *Id*. at 274. The Supreme

11  Court disagreed. *Id*. The Court found that while it was, "of course, not easy to predict future

12  behavior. The fact that such a determination is difficult . . . does not mean that it cannot be

13  made." *Id*. at 274–75. The Court stressed that such predictions are made "throughout our

14  criminal justice system." *Id*. at 275 (noting decisions of parole authorities as well as

15  decisions on bail and sentences). In making such determinations, the Court found it

16  "essential . . . that the jury have before it all possible relevant information about the

17  individual defendant whose fate it must determine." *Id*. at 276. It therefore held that the

18  aggravating factor did not run afoul of the Eighth or Fourteenth Amendments. *Id*. at 276;

19  *see Campbell v. Kincheloe*, 829 F.2d 1453, 1457–58 (9th Cir. 1987) ("The Supreme Court

20  has consistently held that the future dangerousness of a defendant is a proper consideration

21  for the jury in a capital sentencing proceeding" and "[s]uch consideration is consistent with

22  'the kind of individualized focus required in capital sentencing decisions'") (quoting

23  *California v. Ramos*, 463 U.S. 992, 1005–06 (1983)).

24         In *Barefoot*, the Court held that expert testimony on the issue of future

25  dangerousness was admissible. 463 U.S. at 896–97. The Court acknowledged studies

26  showing that predictions of dangerousness were sometimes wrong but explained that this

27  did not render consideration of future dangerousness unconstitutional because such "doubts

28  about the usefulness of psychiatric predictions" could be brought to the jury's attention. *Id.*

at 899 n.7. As the Government notes, courts have rejected challenges to the FDPA based on statistical studies about the predictability of future dangerousness and arguments that such studies suggest that *Jurek* and *Barefoot* should no longer control. *See, e.g.*, *United States v. Christensen*, No. 17-cr-20037, 2019 WL 1793135, at \*12 (C.D. Ill. Apr. 24, 2019) ("The Court agrees with the overwhelming weight of judicial authority . . . [t]he nonstatutory factor of future dangerousness is constitutional."); *United States v. Wilson*, 923 F.Supp.2d 481, 490 (E.D.N.Y 2013); *United States v. Umana*, 707 F.Supp.2d 621, 634 (W.D.N.C. 2010).

Schlesinger identifies no authority that would allow this Court to ignore the holdings of *Jurek* and *Barefoot* and find the future dangerousness factor unconstitutional.

### B. Vagueness

Schlesinger claims that the future dangerousness aggravating factor is unconstitutionally vague and thus violates the Fifth Amendment. (Doc. 245 at 12–13.) The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Government violates this right by taking life, liberty, or property under a law "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357–358 (1983)). An aggravating factor is not unconstitutionally vague "if it has some 'common-sense core of meaning . . . that criminal juries should be capable of understanding.'" *Tuilaepa v. California*, 512 U.S. 967, 973 (1994) (quoting *Jurek*, 428 U.S. at 279); *see also United States v. Fields (Edward)*, 516 F.3d 923, 941 (10th Cir. 2008). "Vagueness review is very deferential." *Fields (Edward)*, 516 F.3d at 941 (citing *Tuilaepa*, 512 U.S. at 973).

Schlesinger argues that the future dangerousness factor "provides no guidance as to how to measure risk or how to determine what level of risk suffices." (Doc. 245 at 12.) This argument fails. "[T]he Supreme Court has repeatedly upheld future dangerousness as an aggravating factor, and has not held that it grants the jury open-ended discretion, or is

unconstitutionally vague." *United States v. Stone*, No. CR12-0072-JCC, 2013 WL 6799119, at \*5 (E.D. Cal. Dec. 20, 2013) (citing *Barefoot*, 463 U.S. at 884; *Simmons v. South Carolina*, 512 U.S. 154, 165 n.5 (1994); *Jurek*, 428 U.S. at 274–76; *Ramos*, 463 U.S. at 1002–03).

Furthermore, the Government's allegations to show Schlesinger's future dangerousness "do[] not have the potential" to confuse the jury by including "innocent conduct." *United States v. Merriweather*, No. 2:07-cr-00243-RDP, 2014 WL 2890632, \*7 (N.D. Ala. June 25, 2014). As mentioned, the Government seeks to prove that Schlesinger has (a) made "repeated threats of violence and stalking . . . law enforcement and persons in positions of authority"; (b) "engaged in a continuing pattern of violence, threatened violence, and attempted violence, including but not limited to the crimes alleged in the Superseding Indictment"; and (c) shown a "[l]ack of remorse for the murder of" Deputy C.W. (Doc. 194 at 3–4.) *Compare Merriweather*, 2014 WL 2890632, \*7 (upholding future dangerousness aggravating factor against vagueness challenge because "[t]he proposed supporting information"—"that [the defendant] committed physical assaults and threatened others"—"is relevant to whether [the defendant] exhibits a pattern of violent behavior"), *with United States v. Grande*, 353 F.Supp.2d 623, 640 (E.D. Va. 2005) (striking the phrase "continued to conduct and influence MS-13 gang business" as vague and more prejudicial than probative because "gang business" does not necessarily constitute a crime). In sum, "the future dangerousness aggravator, as alleged here, has a commonsense meaning that jurors will be able to understand." *Christensen*, 2019 WL 1793135, at \*12 (citations omitted) (reasoning that the Government planned to "prove this factor with individualized evidence purporting to show" defendant's future dangerousness through his actions).

Schlesinger, however, contends that the Court should strike this aggravating factor because it mirrors the sentence enhancer struck in *Johnson*, 576 U.S. 591. (Doc. 245 at 12–13.) This argument is unpersuasive.

*Johnson* involved the Armed Career Criminal Act of 1984, which enhanced the sentence of someone "convicted of being a felon in possession of a firearm" who "ha[d]

three or more previous convictions for a 'violent felony,' a term defined to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" 576 U.S. at 593 (quoting 18 U.S.C. § 924(e)(2)(B)). The Court held that the phrase, "serious potential risk of physical injury to another," was unconstitutionally vague because it allowed unpredictable, arbitrary enforcement and left "grave uncertainty about how to estimate the risk posed by a crime" and "uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 597–601.

Courts have rejected the argument that the reasoning in *Johnson* applies to the FDPA's future dangerousness aggravating factor, *see Christensen*, 2019 WL 1793135, at *12, and as discussed above the Supreme Court has consistently upheld the factor, *see, e.g.*, *Tuilaepa*, 512 U.S. at 974; *Jurek*, 428 U.S. at 275–76; *see also Fields (Edward)*, 516 F.3d at 941–42 (rejecting vagueness challenge to alleged factors that defendant poses a future danger to the lives and safety of other persons, as evidenced by: (a) a continuing pattern of threatened or impending violence; and (b) the defendant's lack of remorse).

Schlesinger's vagueness claim is rejected.

### C.        Dilution of the Government's Burden of Proof

The government has the burden of "establishing the existence of any aggravating factor … beyond a reasonable doubt." 28 U.S.C. § 3593(c). Schlesinger argues that the term, "likely" in in the phrase "likely to commit criminal acts of violence in the future," "dilute[s]" the Government's burden to prove the future dangerousness aggravating factor beyond a reasonable doubt. (Doc. 245 at 13.) Courts have rejected this argument.

"[T]he term 'likely' does not relieve the Government of its burden to establish the future dangerousness factor beyond a reasonable doubt." *Merriweather*, 2014 WL 2890632, *12 (citing cases)*; *see United States v. Fackrell*, No. 1:16-CR-26(2), 2018 WL 7822174, *1 (E.D. Tex. Jan. 23, 2018) (citing cases and stressing that "[t]he exact[] same language—'likely to commit criminal acts of violence in the future'—has been consistently upheld against identical challenges by numerous federal courts."). As the district court observed in *Umana*:

The term "is likely" is necessary phrasing because, of course, one cannot predict future events with absolute certainty. The government still retains its required burden of proof, i.e., it must prove beyond a reasonable doubt that the defendant poses a danger to the lives and safety of others. It is no surprise, then, that the Fourth Circuit has noted that "[f]uture dangerousness is best defined as evidence that a defendant is 'likely to commit criminal acts of violence in the future that would be a threat to the lives and safety of others.'" *United States v. Basham*, 561 F.3d 302, 331 (4th Cir. 2009) (quoting *United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002)). Thus, the government's phrasing of this aggravating factor does not imply a lesser burden of proof than the defendant's right to due process requires.

707 F.Supp.2d at 635; *see also United States v. Montgomery*, 10 F.Supp.3d 801, 843 (W.D. Tenn. 2014).

"It is not illogical to say that the jury must find that Defendant is likely to commit future criminal acts beyond a reasonable doubt." *United States v. Williams (Michael)*, No. CR-05-920-RSWL, 2008 WL 4644830, at *6 (C.D. Cal. Oct. 15, 2008) (citing *Franklin v. Lynaugh*, 487 U.S. 164, 177–87 (1988)).

Finally, "any lingering burden-of-proof issue . . . may be alleviated by the instructions given to the jury." *United States v. Coonce*, No. 10-3029-01-CR-S-GAF, 2014 WL 1018081, at *17 (W.D. Mo. Mar. 14, 2014). Accordingly, the Court "will instruct the jury in this case that the Government must prove the future dangerousness factor beyond a reasonable doubt." *Merriweather*, 2014 WL 2890632, at *13; *see Williams (Michael)*, 2008 WL 4644830, at *6.

The Court rejects Schlesinger's dilution claim.

### D.   Evidentiary Objections

Schlesinger objects to the admission of evidence of his antagonistic and threatening behavior and lack of remorse. (Doc. 245 at 14–16.) These evidentiary challenges are premature.

### 1.   Antagonistic and Threatening Behavior

The Notice includes as one of the sub-factors in the future dangerousness non-statutory aggravating factor Schlesinger's "history of antagonism and threatening

behavior" and alleges that he "has engaged in a continuous pattern of antagonist[ic] and threatening behavior towards law enforcement and persons in positions of authority including repeated threats of violence and stalking." (Doc. 194 at 3.) Schlesinger argues that these allegations are "too vague and describe conduct too attenuated to be relevant to the decision whether to sentence [him] to death." (Doc. 245 at 14.) He cites cases where courts have found that threats to correctional officers were not admissible as evidence of a defendant's future dangerousness. *See, e.g.*, *United States v. Davis*, 912 F.Supp. 938, 945 (E.D. La. 1996) ("Threatening words and warped bravado, without affirmative acts, are simply too slippery to weigh as indicators of character; too attenuated to be relevant in deciding life or death; and whatever probative value they might have is far outweighed by the danger of unfair prejudice and confusion of the issues.").

The Government agrees with Schlesinger that "words alone arguably may not be probative of future dangerousness," but contends that Schlesinger's "antagonistic and threatening behavior involved more than mere threats of violence" and included "affirmative conduct." (Doc. 299 at 14.) According to the Government, "[m]uch of this evidence will be presented to the jury as part of the guilt phase as evidence of premeditation." (*Id.*)

Although the parties discuss the issue of vagueness with respect to the language used in the Notice, Schlesinger's argument appears to be that evidence of his alleged threatening and antagonistic behavior is both insufficient to establish this sub-factor and inadmissible on relevance grounds or because its probative value is outweighed by its prejudicial effect.[1] (*See* Doc. 245 at 14.)

Under the FDPA, "the Government may introduce 'any information relevant to an aggravating factor for which notice has been provided.'" *United States v. Basham*, 561 F.3d 302, 331–32 (4th Cir. 2009) (quoting 18 U.S.C. § 3593(c)) (finding that the district

---

[1] To the extent Schlesinger does challenge the language in the Notice on vagueness grounds, the Court agrees with the Government that the term "antagonistic and threatening behavior" contains a commonsense core of meaning that the jury could understand. *Tuilaepa*, 512 U.S. at 973 (noting that the Court has "found only a few factors vague").

court did not err in admitting evidence of defendant's behavior in correctional facilities as relevant toward his future dangerousness). The FDPA further provides: "Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

The Court cannot make a determination about the sufficiency or admissibility of the Government's evidence at this point in the proceedings. *See United States v. Bowers*, 498 F.Supp.3d 741, 754 (W.D. Pa. 2020) (explaining that challenges to the sufficiency of evidence in the Notice of Intent are "more properly addressed at or closer to trial"); *United States v. Con-Ui*, No. 3:CR-13-123, 2016 WL 9331115, at *14 (M.D. Pa. Jan. 28, 2016) (refusing to strike future dangerousness factor and explaining that "[i]t is premature at this juncture to address issues of admissibility of testimony on the factor. . . ."); *United States v. Williams (Xavier)*, No. S100CR.1008(NRB), 2004 WL 2980027, at *17 (S.D.N.Y. Dec. 22, 2004) ("[T]o the extent defendants challenge the evidentiary bases of the noticed aggravating factors, we will not entertain those challenges at this point."), *aff'd*, 506 F.3d 151 (2d Cir. 2007); *United States v. Denis*, 246 F.Supp.2d 1250, 1255 (S.D. Fla. 2002) ("The court finds arguments on the insufficiency of aggravating factors as premature and denies the motion to strike with leave to reargue at the end of the presentation of the evidence.").

Finally, if evidence of threatening and antagonistic behavior is admitted as relevant and more probative than prejudicial, any remaining concerns about the evidence can be addressed by appropriate jury instructions. *See, e.g.*, *United States v. Roman*, 371 F.Supp.2d 36, 49 (D.P.R. 2005) (explaining that "appropriate jury instructions would be sufficient to cure any vagueness in the aggravator as alleged") (citing *Maynard v. Cartwright*, 486 U.S. 356, 365 (1988)).

2.   Lack of Remorse

The Notice includes as a sub-factor in the future dangerousness non-statutory

1    aggravating factor Schlesinger's "demonstrated lack of remorse . . . as evidenced by his

2    statements and actions during the course of and following the commission of the offense."

3    (Doc. 194 at 4.)

4         Schlesinger argues that the lack of remorse factor should be stricken or severely

5    limited. (Doc. 245 at 15.) He distinguishes between direct statements and conduct that

6    clearly suggest lack of remorse and "the government's apparent view that lack of remorse

7    adheres in the fact that Mr. Schlesinger never directly expressed remorse" for the crime,

8    arguing that the latter implicates his Fifth Amendment rights. (*Id.*)

9         The Fifth Amendment's right against self-incrimination applies to a capital

10   sentencing hearing, *Mitchell (Amanda) v. United States*, 526 U.S. 314, 327 (1999); *Estelle

11   v. Smith*, 451 U.S. 454, 463 (1981), and affords each criminal defendant "the right 'to

12   remain silent unless he chooses to speak in the unfettered exercise of his own will, and to

13   suffer [] no penalty for such silence,'" *Estelle*, 451 U.S. at 468 (quoting *Malloy v. Hogan*,

14   378 U.S. 1 (1964)). The Fifth Amendment "forbids either comment by the prosecution on

15   the accused's silence or instructions by the court that such silence is evidence of guilt."

16   *Griffin v. California*, 380 U.S. 609, 615 (1965).

17        In *Mitchell (Amanda)*, the Supreme Court found that "[b]y holding petitioner's

18   silence against her in determining the facts of the offense at the sentencing hearing, the

19   District Court imposed an impermissible burden on the exercise of the constitutional right

20   against compelled self-incrimination." 526 U.S. at 330. Still, the Court noted that

21   "[w]hether silence bears upon the determination of a lack of remorse … is a separate

22   question" and "express[ed] no view on it." *Id*. The circuits are split on this issue. *Compare

23   United States v. Caro*, 597 F.3d 608, 629–30 (4th Cir. 2010) (finding that "*Estelle* and

24   *Mitchell [(Amanda)]* together suggest that the Fifth Amendment may well prohibit

25   considering a defendant's silence regarding the non-statutory aggravating factor of lack of

26   remorse"); *Lesko v. Lehman*, 925 F.2d 1527, 1544–45 (3d Cir. 1991) (holding that one's

27   failure to apologize is barred from consideration as to lack of remorse), *with United States

28   v. Mikos*, 539 F.3d 706, 718 (7th Cir. 2008) (holding that at capital sentencing, one's silence

may be considered as to his or her lack of remorse).

Contrary to Schlesinger's characterization of the factor, the Government states that it intends to support the lack of remorse allegation by evidence of Schlesinger's "statements and actions during the course of and following" the crime (Doc. 194 at 4), not by his failure to directly express remorse for committing the crime. As the Government notes, courts have routinely rejected challenges to such use of the lack of remorse factor. *See Caro*, 597 F.3d at 627 ("Cases in which the government has properly established this non-statutory aggravating factor have generally involved affirmative words or conduct."); *Umana*, 707 F.Supp.2d at 636 ("There is nothing per se unconstitutional about considering a defendant's lack of remorse as a characteristic that favors imposition of the death penalty" but "the Fifth Amendment limits proof of lack of remorse to 'affirmative words or conduct' expressed by the defendant."); *United States v. Fackrell*, 368 F.Supp.3d 1010, 1015–16 (E.D. Texas 2018) (same). Schlesinger's concerns about such evidence can be adequately addressed at trial.

In *United States v. Diaz,* the district court denied the defendant's motion to strike the notice of intent. In doing so the court "follow[ed] the weight of authority from other courts finding 'lack of remorse' constitutional and admissible to support future dangerousness." No. CR 05-00167 WHA, 2007 WL 656831, at * 25 (N.D. Cal. Feb. 28, 2007) (citing *Davis*, 912 F.Supp. at 946, where the court allowed the government to allege lack of remorse as probative of future dangerousness but not as a stand-alone aggravating factor). The court explained, however, that "[a]s with all other evidence in the penalty phase of a capital trial, evidence of defendants' lack of remorse is 'subject to scrutiny to ensure that it is relevant, reliable, and its probative value outweighs any danger' of unfair prejudice, confusion, or misleading the jury." *Id.*, at *26 (quoting *United States v. Cooper*, 91 F.Supp.2d 90, 113 (D.D.C. 2000)).

The *Diaz* court also found that making such a determination about the evidence's admissibility at that point in the proceedings would be "premature." *Id.*; *see Bowers*, 498 F.Supp.3d at 758 (finding arguments about the sufficiency or prejudice of "lack of

remorse" evidence "premature"). In *Cooper* the court concluded that evidence of lack of remorse pertaining to future dangerousness "will be allowed if the Court determines at trial that the evidence is reliable and is not outweighed by the risk of unfair prejudice to the defendant, or the risk that it would confuse or mislead the jury." 91 F. Supp. 2d at 113. This Court will likewise determine the admissibility of the Government's lack of remorse evidence at a later point in the proceedings.

Finally, if such evidence is admitted, the Court will provide the proper jury instruction. *See Umana*, 707 F.Supp.2d at 636 ("[I]f necessary, the Court will offer an instruction to the jury that the defendant's mere silence may never be considered as proof of lack of remorse."); *see also Caro*, 597 F.3d at 630–31 (finding any error in considering defendant's failure to apologize harmless in part because the court cautioned the jury "that the defendant has a constitutional right to remain silent, and mere silence, alone, by the defendant should not be considered as proof of lack of remorse").

Schlesinger's Motion to Strike (Doc. 245) is denied.

### III.    Motion to Strike Victim Impact Factor

The Notice sets out the victim impact factor as follows:

> Ryan Phillip Schlesinger caused injury, harm, and loss to Deputy United States Marshal C.W., as well as to his family, friends, and co-workers, as evidenced by his personal characteristics as an individual human being and the impact of his death upon him and his family, friends, and co-workers. 18 U.S.C. § 3593(a); *Payne v. Tennessee*, 501 U.S. 808, 827 (1991).

In *Booth v. Maryland*, 482 U.S. 496, 509 (1987), the Supreme Court held that the introduction of a victim-impact statement to a capital sentencing jury violated the Eighth Amendment. In *Payne*, 501 U.S. at 827, the Court overruled *Booth* in relevant part.

The Court explained that "[a] State may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." *Id.* Therefore, "if the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no *per se* bar." *Id.*; *see United*

1   *States v. Mikhel*, 889 F.3d 1003, 1052 (9th Cir. 2018). "Victim-impact evidence gives a

2   'quick glimpse' of the victim's life and of his 'uniqueness as an individual human being.'"

3   *Mikhel*, 889 F.3d at 1052 (quoting *Payne*, 501 U.S. at 822–23). *Payne* "nowhere limited

4   victim-impact evidence to evidence by or about family members," and the Ninth Circuit

5   has held that evidence of the impact of the victim's death on friends and colleagues is

6   admissible. *Id.* (citing *Runyon*, 707 F.3d at 499–500).

7        *Payne* left intact, however, *Booth*'s prohibition on the admission of

8   characterizations and opinions about the crime, the defendant, or the appropriate sentence.

9   *Id.* at 830 n.2; *see Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (per curiam).

10       In his motion to strike the factor, Schlesinger asserts that the introduction of victim-

11   impact evidence at sentencing violates the Eighth Amendment. (Doc. 246 at 3.) He argues

12   that *Payne*, which held the opposite, was "wrongly decided" (*id.*) and "should be

13   overruled" (*id.* at 4). It is not the province of a district court to overrule Supreme Court

14   precedent. *See Hutto v. Davis*, 454 U.S. 370, 375 (1982) ("[A] precedent of this Court must

15   be followed by the lower federal courts no matter how misguided the judges of those courts

16   may think it to be."); *see also Bosse*, 137 S. Ct. at 2 ("[I]t is this Court's prerogative alone

17   to overrule one of its precedents.") (quoting *United States v. Hatter*, 532 U.S. 557, 567

18   (2001).

19       Schlesinger correctly notes that the use of victim-impact evidence under *Payne* is

20   not unlimited. (Doc. 246 at 7.) The Court agrees and will allow only evidence about C.W.,

21   his life and his unique characteristics as a human being, and the impact of his murder on

22   his family, friends, and coworkers. *Payne*, 501 U.S. at 827; *Mikhel*, 889 F.3d at 1052. The

23   Court will exclude any testimony characterizing the crime, the defendant, or the

24   appropriate sentence. *Bosse*, 137 S. Ct. at 2; *Payne*, 501 U.S. at 830 n.2. The Court will

25   also exclude any testimony that is "so unduly prejudicial that it renders the trial

26   fundamentally unfair," in violation of due process. *Payne*, 501 U.S. at 825

27       Schlesinger's motion to strike the victim impact non-statutory aggravating factor

28   will be denied. (Doc. 246.)

**IV.    Motion to Strike the Substantial Planning and Premeditation Factor**

Schlesinger argues that the substantial planning and premeditation factor in unconstitutionally vague and overbroad. (Doc. 248.) He contends that neither evidence of "planning and premeditation" nor the word "substantial" adequately narrow the class of murderers subject to the death penalty. (*Id.* at 3–6.) He also contends that "decisions upholding the factor demonstrate its unconstitutionality" because courts have been unable to fashion a narrow and specific construction of "substantial." (*Id.* at 3, 6–9.)

An aggravating factor is impermissibly vague if it lacks "some common-sense core of meaning . . . that criminal juries should be capable of understanding." *Tuilaepa*, 512 U.S. at 973. An aggravating factor is overly broad if a juror "fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty," *Arave v. Creech*, 507 U.S. 463, 474 (1993), and fails to narrow the class of offenders eligible for the death penalty, *see Zant v. Stephens*, 462 U.S. 862, 877 (1983) ("[A]n aggravating circumstance must genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."). "The Supreme Court has 'found only a few factors vague, and those in fact are quite similar to one another' in their tendency to involve pejorative adjectives that describe a crime as a whole." *United States v. Mitchell (Lezmond)*, 502 F.3d at 978 (quoting *Tuilaepa*, 512 U.S. at 974).

The Ninth Circuit in *Mitchell (Lezmond)* upheld the constitutionality of the substantial planning and premeditation factor against arguments that it was vague and overbroad. 502 F.2d at 978. The court explained that "[a]ggravating factors 'are by necessity somewhat general,' and the Constitution does not demand 'mathematical precision.'" *Id.* (quoting *Tuilaepa*, 512 U.S. at 973) (additional quotes omitted).

*Mitchell (Lezmond)* is binding on this Court. *See Yong v. INS*, 208 F.3d 1116, 1119– 21 & n.2 (9th Cir. 2000) ("[O]nce a federal circuit court issues a decision, the district courts within that circuit are bound to follow it and have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority."); *Hart v.*

*Massanari*, 266 F.3d 1155, 1175 (9th Cir. 2001) ("A district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided.").

Other circuits have also rejected claims that the "substantial planning and premeditation" factor fails to perform a narrowing function. *See United States v. Davis*, 609 F.3d 663, 689–90 (5th Cir. 2010) (explaining that "the term [substantial] alone, without further explanation, [is] sufficient to convey that meaning and to enable the jury to make an objective assessment" and rejecting argument that the term "is vague because it is subjective and has different meanings.") (quoting *United States v. Flores*, 63 F.3d 1342, 1373–74 (5th Cir. 1995)); *United States v. Bourgeois*, 423 F.3d 501, 511 (5th Cir. 2005) ("These factors . . . obviously narrow the class of murderers who could be eligible for the death penalty because not every murder involves substantial planning or premeditation."); *United States v. Tipton*, 90 F.3d 861, 895–96 (4th Cir. 1996) (explaining that "'substantial' as a modifier of "planning and premeditation" could only have been understood by the jury to mean a higher degree of planning than would have the words 'planning and premeditation' alone—*i.e.,* more than the minimum amount sufficient to commit the offense."); *United States v. McCullah*, 76 F.3d 1087, 1110 (10th Cir. 1996) ("In the context in which it appears, the term [substantial] clearly has a commonsense meaning of 'considerable in quantity: significantly large,' which criminal juries are capable of understanding.")

To support his argument that the word "substantial" is unconstitutionally vague, Schlesinger relies on *Arnold v. State*, 224 S.E.2d 386, 392 (Ga. 1976). *Arnold* is "unpersuasive," given the "overwhelming weight of recent federal decisions finding that the 'substantial planning and premeditation' factor is not unconstitutionally vague." *Diaz*, 2007 WL 656831, at *10 (citing *United States v. Bin Laden*, 126 F.Supp.2d 290, 296 & n. 7 (S.D.N.Y. 2001).

In sum, "courts routinely have denied challenges to the breadth and specificity of the substantial premeditation aggravating factor." *Bowers*, 498 F.Supp.3d at 753 (citing

cases); *see Christensen*, 2019 WL 1793135, at *14 ("Every other federal court to consider the issue is in agreement.") (citing cases).

Finally, any concerns about vagueness can be resolved through "precise instructions to the jury." *United States v. Glover*, 43 F.Supp.2d 1217, 1225 (D. Kan 1999); *United States v. Llera Plaza*, 179 F. Supp. 2d 464, 485 (E.D. Pa. 2001). In *Tipton*, the court explained that while the word "substantial" may have different meanings depending on its context, the language of the FDPA together with the jury instructions conveyed a common-sense meaning and sufficiently "channeled the jury's discretion in assessing eligibility for the death penalty."[2] 90 F.3d at 896. As the Government notes, Schlesinger's counsel will participate in crafting an appropriate jury instruction.

Schlesinger's motion to strike the "substantial planning and premeditation" non-statutory aggravating factor will be denied. (Doc. 246.)

## V. Conclusion

As set forth above, Schlesinger's challenges to the FDPA and the Notice are unsupported by relevant authority and/or premature. Schlesinger's challenges to victim impact and substantial planning and premeditation fail in the face of binding precedent. Accordingly,

**IT IS ORDERED** denying Schlesinger's Motion to Dismiss (Doc. 247).

**IT IS FURTHER ORDERED** denying Schlesinger's Motion to Strike Future Dangerousness Aggravator (Doc. 245).

**IT IS FURTHER ORDERED** denying Schlesinger's motions to strike the victim impact non-statutory aggravating factor (Doc. 246) and to strike the "substantial planning and premeditation statutory aggravating factor (Doc. 248).

Ordered on this 29th day of November, 2021.

_____
Honorable Raner C. Collins
Senior United States District Judge

---

[2] In *Tipton,* the judge instructed the jury that "substantial planning means planning that is considerable, or ample for the commission of a crime at issue in this case: murder." 90 F.3d at 896.