**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>　　　　　Plaintiff,<br>v.<br>Ryan Phillip Schlesinger,<br>　　　　　Defendant. | No. CR-18-02719-TUC-RCC (BGM)<br><br>**ORDER** |

Before the Court is Defendant Schlesinger's motion to compel the Government to disclose data from the Federal Bureau of Prisons ("BOP" or the "Bureau"). (Doc. 236.) After briefing and oral argument, the Court deferred a ruling and ordered Schlesinger to supplement his motion with a list of data needed by his experts and a proposed protective order. (Doc. 372 at 11.) Schlesinger complied, and the Government filed a response. (Docs. 383, 396.) For the following reasons, the Court grants the motion.

**I.     Background.**

In its prior order, the Court assessed Schlesinger's request under Federal Rule of Criminal Procedure 16(a)(1)(E)(i) (requiring that the Government disclose, upon the defendant's request, all "documents" and "data . . . within [its] possession, custody, or control" when the items are "material to preparing the defense"). (Doc. 372 at 3.) The Court found the requested data "within the Government's possession, custody, or control" and relevant to the issue of Schlesinger's future dangerousness, an aggravating factor alleged by the Government. (*Id.* at 11.) The Court also found "that the data may be material, as [Schlesinger's] experts will need some BOP inmate data to form their opinions on his own

risk of future dangerousness." (*Id*.) The Court observed, however, that defense counsel had not yet identified which data would be material to their experts. (*Id*.) The Court thus deferred a ruling and ordered Schlesinger to supplement his motion with such data. (*Id.* at 11.) The Court also denied "any request that the Government disclose data outside the BOP database." (*Id*. at 12.)

In his supplement, Schlesinger, supported by the declaration of his expert, Dr. Thomas J. Reidy, modified his initial request. (Doc. 383 at 2; Doc. 383-1, Ex. A at 2.) Dr. Reidy, a forensic psychologist who regularly assesses defendants' risk violence, has withdrawn his request for several categories of information to reflect the fact that they were not readily available from the BOP. (Doc. 383-1, Ex. A at 6–8.)

In its response to Schlesinger's supplement, the Government renewed its arguments that the material sought was immaterial and overbroad. (Doc. 396.) The Government also attached a declaration from Anthony Iwaszko, a BOP social science research analyst with knowledge of BOP databases. (Doc. 396-1, Ex. 1.)

**II.   Discussion.**

*A.   Materiality of Schlesinger's Supplement's Requested Data.*

Data is material if it will help the defendant "prepare a defense." *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013). The Court "has broad discretion in deciding what items are material to the preparation of the defense." *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984).

Based on Dr. Reidy's avowals, the Court finds that the items in Schlesinger's supplemental request are material. (Doc. 383-1, Ex. A.) Dr. Reidy described the "classification data" as "essential for making the most accurate assessment of a defendant's likelihood of future dangerousness." (*Id*. at 6.) He stressed that the requested data was "crucial to the actuarial analysis of future dangerousness posed by capital murderers as they will be used to calculate baseline rates and assessment of deviations from those rates by [life-without-parole] inmates." (*Id*.)

Dr. Reidy explained why data disclosed in other cases would not suffice. He opined that "merging BOP datasets" from other cases would prove ineffective based on the lack of classification data from those cases, the variety of data requests across cases, and the presence of protective orders that impede the use of prior data. (*Id.* at 4–5.) The Court finds Dr. Reidy's avowals persuasive. The data Dr. Reidy requests is material because it will help Schlesinger prepare a defense to the future dangerousness aggravating factor. *See Hernandez-Meza*, 720 F.3d at 768 (stating that "materiality is a low threshold").

### B. The Data Requested Is Not Overbroad or Unduly Burdensome.

In addition to considering the materiality to the defense, the Court must also consider whether complying with the request would be "unduly burdensome" to the government. *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) ("[I]t is incumbent on the district court to consider the government interests asserted in light of the materiality shown."); *see Cadet*, 727 F.2d at 1469 (upholding order compelling discovery when defendants show materiality in the absence of a "legitimate governmental interest . . . which would justify" denying discovery); *United States v. Ruiz*, NO. CR 16-121-TUC-CKJ, 2016 WL 6828197, at *9 (D. Ariz. Nov. 18, 2016) (citing *Mandel*, 914 F.2d at 1219) (stating that in addition to determining materiality, the Court must "consider whether a [discovery] request would be unduly burdensome in light of the materiality shown").

The Court finds that the e-data requested in Schlesinger's supplement is not overbroad or unduly burdensome. First, as already noted, the data is material. Second, Part A of the request applies only to present inmates, and Part B extends only five years. *Cf. United States v. Smith*, No. 3:16-cr-00086-SLG-1, 2019 WL 11863697, *2 (D. Alaska Oct. 22, 2019) (finding BOP data of inmates "convicted of capital homicide but sentenced to life without parole . . . is material for a ten year period"). Finally, the Government now appears to acknowledge that it can produce the e-data, and has set forth a timeframe for doing so. The Government has avowed that Mr. Iwaszko will need about three weeks to produce the data on Excel spreadsheets. (Doc. 396 at 4.) Considering Mr. Iwaszko's other

responsibilities, the Government requests 90 days to complete its production of the data. (*Id*.) The Court finds this time frame reasonable.

That aside, in its initial response, the Government argued that producing Part A(3)(d) of Schlesinger's request ("[h]earing officer reports for all 100 level disciplinary offenses") would unduly burden the Government because it would require the BOP to identify all inmates who have committed at least one 100-level offense, to pull the physical files of these inmates in their respective facilities, and scan, copy, and compile all of these reports. (Doc. 295 at 14.) The Government's argument is well-taken. Mr. Iwaszko reviewed Schlesinger's data request and advised that SENTRY, a BOP data base, did not contain these reports (which the hearing officer completes at the end of the disciplinary process). (Doc. 396-1, Ex. 1 at 2–3.) *See United States v. Watland*, No. 11-cr-0038-JLK-CBS-1, at 8 (D. Colo. June 21, 2012) (Doc. 505-2 at 8–9) (describing SENTRY). The Bureau's other database, Discipline & Administration Reintegration Tracking System (DARTS), contains some of these reports. (*Id*. at 2–3.) DARTS "is searchable by incident report number or by an inmate's federal registration number." (*Id*. at 3.)

However, not all BOP institutions use DARTS. The Bureau has been "gradually activating DARTS at institutions nationwide" since October 2018. (*Id*.) According to DARTS's activation schedule, 86 institutions presently use DARTS. (*Id*., Attach. 3 at 1–2.) To date, 11 activation dates remain, the next one set for January 31, 2022. (*Id*. at 2.) Hearing officers complete their reports on DARTS upon activation. (*Id*., Ex. 1 at 3.) The system will not contain any pre-DARTS reports. (*Id*.) Accordingly, the Government asks the Court either to deny Schlesinger's request for all hearing officer reports for 100-level disciplinary offenses or limit disclosure to those on DARTS. (Doc. 396 at 3.)

The Government's request to limit disclosure of these reports to those on DARTS is granted. As shown above, production of the reports outside DARTS would place a heavy burden on the Government. The Government avows that over 3,000 life-without-parole inmates exist throughout the United States. (Doc. 295 at 15.) The Government would have to determine which facility each life-without-parole inmate resides, locate each inmate's

central file at his respective facility, find any hearing officer reports, and determine whether these reports concern any 100-level offenses. *See* U.S. Department of Justice, Federal Bureau of Prisons, Inmate Central File, Privacy Folder, and Parole Mini-Files, at 4–5 (2015), https://www.bop.gov/policy/progstat/5800_017.pdf. Compiling the reports would only add to this burden. Moreover, SENTRY contains the actual disciplinary history of all 100 to 400 level violations (part A(3)(a) of the supplement's request). Considering that Schlesinger wishes to show that life-without-parole inmates similar to him pose little-to-no risk of danger, the Court finds that such history and the ongoing accumulation of the hearing officer reports through DARTS shall sufficiently help Schlesinger plan his defense. The Court therefore grants the Government's request to limit disclosure of these reports to those on DARTS.[1]

Mr. Iwaszko did not list any other data absent from SENTRY. However, Dr. Reidy noted that, in terms of the "classification data," SENTRY carries only the most recent classification forms for inmates. (Doc. 383-1, Ex. A at 6 n.2.) All initial forms have been "housed at the Designation and Sentence Computation Center in Grand Prairie, [Texas] since September 12, 2006," and all forms between the initial and most recent forms are overwritten by the latter. (*Id.*) Unlike the hearing officer reports outside DARTS, these initial forms are housed in a central location. These initial forms, however, appear less material than the most recent ones. Schlesinger seeks to prove that he will not pose a risk of danger in prison. The most recent forms describe an inmate's present risk *in* prison, but the initial forms displays the inmate's risk upon *entering* prison. Further, even though the initial forms are located in one location, the BOP will need significant time to find the initial forms of all life-without-parole inmates, copy them, and ship them two states away to Schlesinger's counsel. And thus, in weighing the materiality of the initial and most

---

[1] The Court also finds that these reports on DARTS are within the Government's possession, custody, or control for the same reasons it found that the data on SENTRY was within the Government's possession, custody or control. (*See* Doc. 372 at 3–6 [finding that "the Government has knowledge of and access to" the data in SENTRY].)

recent forms against the level of burden to disclose them, the Court orders that the Government shall disclose only the most recent forms.

Accordingly,

**IT IS ORDERED** granting Schlesinger's Motion to Compel Disclosure of BOP Statistical Information as to only the data requested in Schlesinger's supplement and contained in a BOP database. (Doc. 236.)

**IT IS FURTHER ORDERED** that no later than **April 25, 2022**, the Government shall disclose the data requested in Schlesinger's supplement. (Doc. 383 at 2–4.) The Government shall disclose the data through Microsoft Excel.

**IT IS FURTHER ORDERED** that the parties act reasonably and in good faith in setting a disclosure schedule, resolving any confusion from the request, and complying with the protective order.

Dated this 1st day of February, 2022.

Honorable Raner C. Collins
Senior United States District Judge