GARY M. RESTAINO
United States Attorney
District of Arizona
SARAH B. HOUSTON
State Bar No. 026691
JANE L. WESTBY
State Bar No. 017550
Assistant United States Attorneys
405 West Congress, Suite 4800
Tucson, Arizona  85701-5040
Telephone: (520) 620-7300
E-mail:  sarah.houston@usdoj.gov
         jane.westby@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-18-02719-TUC-RCC (BGM) |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE UNITED STATES' EXHIBITS AND WITNESSES |
| vs. | |
| Ryan Phillip Schlesinger, | (Dkt. No. 609) |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, respectfully responds to defendant's objections to the United States' exhibits and witnesses.  (Dkt. No. 609). The objections should be overruled for the reasons discussed below.

**FACTS**

On November 29, 2018, the defendant opened fire with an assault rifle on the United States' Marshals Service (USMS) Task Force Officers who were attempting to arrest defendant for stalking a Tucson Police Department Sergeant.  Defendant had prepared for war against law enforcement and killed Deputy Marshal C.W. after the task force had

announced their presence, stated they had warrant for his arrest, and asked him to exit the house.

Many of the defendant's objections to the exhibits incorrectly allege that they are unfairly prejudicial. However, the standard for admissibility is whether the *probative value is substantially outweighed* by a danger of unfair prejudice. Fed.R.Evid. Rule 403 (emphasis added). In this case, the probative value of the United States exhibits is high, and is not substantially outweighed by unfair prejudice, if any.

| Exhibit No. | Reply to Objection |
|---|---|
| 8 | Video of Deputy U.S. Marshal (Deputy Marshal) C.W.'s arrival at Banner UMC. The United States has asked the defense for a stipulation to the time of arrival of the Armored Vehicle transporting Deputy Marshal C.W. to Banner UMC after defendant shot him. The defense has not responded. If the defense agrees to stipulate to the time of arrival, the government will agree to not offer the video for admission. The video is relevant to show the time of arrival to provide the jury with a timeline of events leading to the time that medical staff declared C.W. deceased. The video shows the armored vehicle arriving at the hospital and Deputy Marshal C.W. being removed from the vehicle, placed on a gurney, and taken into the hospital. It is not unfairly prejudicial. |
| 36 | Defendant objects to the militia reference on the officer safety bulletin. The United States will redact the reference to "militia." |
| 88, 89, 90 | **Exhibit 88** is a photo of the remains of Deputy Marshal C.W. as he first arrived at the Office of the Medical Examiner. This photo is a photo of the upper body and upper thigh area of the remains of Deputy Marshal C.W. It is relevant to show the injuries and the medical artifacts upon arrival at the Office of the Medical Examiner. It provides an overall view of the entrance and exit wounds of the .223 caliber bullets. The photo lays foundation for Dr. Lougee's testimony and establishes that the autopsy was performed on Deputy Marshal C.W. It is highly probative evidence and is not unfairly prejudicial.<br><br>**Exhibit 89** is a photo showing the right armpit area of the remains of Deputy Marshal C.W. It best shows the path of the .223 caliber fragments that exited C.W.'s right side and then entered his right arm and exited again. This photo is highly probative to show the path of the .223 bullet fragments. Forensic examination shows that the .223 bullet fragment found in DUSM's arm, pictured in the photo, was fired by Defendant with his assault rifle. |

| | | |
|---|---|---|
| 1 | | Exhibits 88 and 89 are not cumulative. Exhibit 88 provides an overview of Deputy Marshal C.W.'s wounds and Exhibit 89 focuses on the path of the .223 fragment out of the victim's right chest and into right his arm.<br><br>**Exhibit 90.** The United States is removing Exhibit 90 from the exhibit list. |
| | 125, 126 | **Exhibits 125 and 126** are both photos of the inside of the right shoulder strap of Deputy Marshal C.W.'s tactical vest. The photos are a long view (Exhibit 125) and a closer view (Exhibit 126) of the damage to the vest caused when defendant's .223 bullet fragmented and tore through DUSM C.W.'s right chest. The photos are not cumulative because Exhibit 125's long view gives a frame of reference for where the damage is on the shoulder strap and Exhibit 126 shows the damage close up. This is highly probative evidence to show the path of the defendant's .223 bullet as it fragmented in C.W.'s chest and entered his right arm.<br><br>The defendant's objections are inconsistent with the proffered testimony of defense expert Dr. Simms. Dr. Simms' expert notice lists the Bates numbers underlying exhibits 125 and 126 as documents that he reviewed and which may correlate with his opinions. (Dkt. No. 620, p 9). This undermines defendant's argument that the exhibits are too inflammatory to be presented to the jury. |
| | 132, 133 | **Exhibits 132 and 133** show the damage to the right armpit area of DUSM's tactical vest. They are not cumulative because each photo shows a different angle of damage. The damage to the vest in this area is highly probative to show the bullet path. Moreover, the defendant represents that his expert Dr. Simms has reviewed these photos and they correlate to his opinion. This undermines defendant's objection. (Dkt. No. 620, p. 9). |
| | 203, 209 | **Exhibit 203** is a long view of defendant's living room with a list of TPD Mental Health Support Team (MHST) members on a table in the room along with the TPD evidence marker. The list contains the names of MHST team members that defendant targeted after his firearm was seized for attempting to shoot a MHST team member and he was transported for a mental health evaluation on August 18, 2017.<br><br>**Exhibit 209** is a view of the living room which contains a better picture of the living room window struck by a bullet from a law enforcement officer returning fire outside of defendant's bedroom |

| | | |
|---|---|---|
| | | window. The bullet crossed through the defendant's bedroom, through the house and out the living room window shown in the photo. Neither photo is inflammatory. The photos are not cumulative. |
| | 204 | **Exhibit 204** is a close-up of the list of TPD MHST team members shown in **Exhibits 203 and 209** above. It clearly shows the names of TPD MHST team members that were involved in the service, transport, and attempted service of mental health evaluation petitions in August 2017, August 2018, and November 2018. The MHST team member that defendant attempted to shoot in August 2017 is also on this list.<br><br>All of the above evidence was admitted pursuant to the Court's order granting the United States' Motion to Admit Inextricably Intertwined Evidence. (Dkt. No. 539). All of this evidence shows defendant's anger at TPD arising from the seizure of his firearm and TPD either serving or attempting to serve him with mental health petitions. This list shows that MHST team members were targeted by defendant. Its prominent location on the table in the living room shows the defendant's current mental state – that he remained focused and continued to target law enforcement. The list of MHST team members is additional evidence that defendant was at "war" with law enforcement as he stated in multiple emails. This photo is highly probative of premeditation and intent and is neither cumulative nor inflammatory. |
| | 212 | **Exhibit 212** is a photo of defendant's degrees from the University of Phoenix. These college degrees are highly probative of defendant's abilities and that he is not the highly developmentally delayed person that the defense wants to represent to the jury. This further shows that defendant does not lack theory of mind as the defense argues. The successful completion of a college degree requires oral and written communication skills and shows that defendant can effectively communicate with others and does not lack theory of mind. Furthermore, the fact that defendant planned, followed through, and completed college degrees is evidence of his ability to plan and prepare for a goal. The defendant's goal related to TPD was war.<br><br>Furthermore, Defendant admits that he obtained a degree from the University of Phoenix in his meeting with TPD officers on July 3, 2018. The statement and the photo together are highly probative of defendant's ability to plan and prepare and that he does not lack theory of mind. Evidence of a college degree is not unfairly prejudicial. |

| | | |
|---|---|---|
| | 250, 263, 264, 568, 569, 576, 577, 578 | **Exhibit 250** is a photo of the front page of the August 2018, petition for mental health evaluation for defendant which was located in defendant's bedroom during the execution of a search warrant. This evidence is highly probative of defendant's knowledge and focus on his mental health evaluations initiated by TPD which fueled his anger at TPD and motivated him to plan and prepare for war with law enforcement.<br><br>There is nothing unfairly prejudicial about the photo. The facts shown in the photo, depicting the first page of the petition, have been admitted as inextricably intertwined evidence. (Dkt. No. 539)<br><br>The photo is not-hearsay and foundational evidence will be offered to show that the document it depicts is what it purports to be. Deputy Degan will testify that this is a copy of the first page of the petition that he obtained. It is non-hearsay because it is offered to show defendant's state of mind.<br><br>**Exhibits 263 and 264** will not be admitted as exhibits. They will be used to refresh recollection if needed.<br><br>**Exhibits 568 and 569** will be used to refresh recollection. The physical petition and order are not being offered for admission unless defendant opens the door.<br><br>The underlying evidence was admitted by Court Order granting the United States' Motion to Admit Inextricably Intertwined Evidence, the Court having heard the testimony about the injunction at the hearing on May 23, 2023. (Dkt. Nos. 530, 539). This injunction against harassment was affirmed on November 13, 2018, and defendant was ordered in open court to turn over any firearms to either TPD or the Pima County Sheriff's Office. Defendant did not do so and murdered DUSM C.W. a couple of weeks later with the assault rifle he assembled in early 2018. This is highly probative evidence of premeditation that defendant was planning for war and therefore, would not surrender his firearms.<br><br>**Exhibits 576-578** will not be offered for admission unless defendant opens the door. They may be used to refresh recollection if needed. |
| | 261, 262, 302, 354-360 | **Exhibit 261-262** is a long view (to show context) and a close-up view of books found in defendant's room. The books depicted are mostly LSAT books and a military history book. The LSAT books show that |

| | |
|---|---|
| | he is able to plan and prepare for a goal.  The military history book shows defendant's focus on war and the military.  These photos are highly probative of defendant's intent to go to war and are not unfairly prejudicial.<br><br>**Exhibit 302.**  This is a photo of a Jiu Jitsu book.  This is relevant to show defendant's focus on fighting.  It is further evidence of defendant's planning and preparation.  It shows that defendant is preparing to fight.<br><br>**Exhibit 364-360** are photos of books including LSAT, Military History, differential equations, and military manuals.  They include both long views for context and close-up views.  The military manuals at **Exhibit 359** are highly probative of defendant's preparation and planning and intent to go to war with law enforcement.  The defense has alleged that defendant lacks theory of mind and that his emails about going to war were just misunderstandings because defendant only meant to convey that people should stay away.  However, defendant's collection of military manuals for military operations and tactics, firearms training, and marksmanship – all show that he meant what he said.  He was going to war with law enforcement.  These photos of the miliary manuals in defendant's residence are highly probative and not substantially outweighed by unfair prejudice.<br><br>Photos of the books are not hearsay as they are offered to show defendant's state of mind and that he is highly functioning and motivated for combat. |
| 265 | **Exhibit 265** is a photo of defendant's identification documents.  These documents show that it was defendant that purchased a Glock 9 mm in August 2018, two days before he went to Officer Dial's parents' residence and threatened to include the Officer's family in his "beef."  (Bates No. 3359A).  They also show that defendant purchased the lower receiver for the assault rifle he used to fire on the Task Force members and murder Deputy Marshal C.W.   There is nothing prejudicial about identification documents. |

| | | |
|---|---|---|
| | 288-291 | **Exhibit 288-291** are photos of a .22 caliber semi-automatic pistol that defendant had in his bathroom drawer.  This bathroom was directly off of the defendant's bedroom.  There were two magazines that appear to be loaded with the pistol.  This is highly probative evidence that defendant was preparing and planning for combat.  Defendant has a back-up weapon within reach in the bathroom along with a 30-round magazine for his assault rifle on the floor of the bathroom.  Other evidence at trial will show that defendant had barricaded the doors and installed multiple camaras.  The presence of additional firearms is consistent with the defendant's obvious intent to wage war against law enforcement. |
| | 325 | **Exhibit 325** is a blank space on the exhibit list. |
| | 382 | **Exhibit 382** is a photo of the TPD MHST team on defendant's laptop.  Defendant targeted members of the MHST after he was transported on August 18, 2017, for a mental health evaluation.  The photo of the MHST team on defendant's laptop is further evidence that he was targeting the MHST team members.  This photo is highly probative and is not unfairly prejudicial. |

| | | |
|---|---|---|
| | 422, 423, 517-26 | **Original Exhibits 422 and 423** (Bates No. 6486 and 6487) have been deleted from the Exhibit list.<br><br>**Original Exhibits 517 through 524** (Now Exhibits 446-453) are photos of the elementary school that defendant shot, along with photos of the window that was hit, the bullet recovered from the window, and the inside of the school room showing the interior of the window defendant hit. Ballistics show that the bullet recovered from the school window was fired from defendant's assault rifle.<br><br>**Original Exhibits 525 and 526** (now 454 and 455 with new Bates numbers 5638 and Bates No. 5641) are photos of the hole (H1) in the school window and the damaged window seal.<br><br>The school can be viewed from the defendant's bedroom window through which he fired. The bullet path between the defendant's bedroom window and the school window cuts directly through the side yard where the Task Force members were standing when defendant opened fire at them. Thus, the fact that the bullet hit the school shows that the Task Force members outside of defendant's bedroom window were in the defendant's field of fire. This is highly probative evidence of attempted murder, and it is not substantially outweighed by unfair prejudice.<br><br>This evidence is part of defendant's crimes and is necessary to tell the story of defendant's crimes. All of the photos of the school with the damage to the window and the view of the interior of the school room are relevant to account for all six bullets that defendant fired. Defendant's expert R.T. Wyant also accounts for this trajectory to the school on the trajectory report disclosed by the defense. All of defendant's bullets need to be accounted for so that the jury is not left to wonder why all the bullets fired are not accounted for.<br><br>The evidence will show that the school was cleared by the Task Force before they approached defendant's residence to arrest him. The evidence will show that there were no children endangered at the school.<br><br>The United States is not moving to admit the photo log at exhibit 522 (now Exhibit 451) |
| | 550 | The United States is not moving to admit this chart. It is being removed from the exhibit list. |

| | |
|---|---|
| 573 | **Exhibit 573** is the body worn camera video of TPD Officer Hill who recorded defendant when he came to the TPD station to arrest TPD officers on November 20, 2018. The video is relevant to show the stalking of a TPD Sergeant which lead to the arrest warrant for stalking that was being served when defendant opened fire on the Task Force and killed Deputy Marshal C.W.<br><br>The defense objects to the reference to defendant's injunctions against harassment in the video. However, the court has previously ordered that the injunction against harassment obtained by TPD MHST Detective Golden is admissible as part of the inextricably intertwined evidence. (Dkt. No. 539, See Exhibit 568 and 569 above). Therefore, the video is highly probative and is not unfairly prejudicial. |
| 615-618 | **Exhibits 615 to 618** are the search warrants for defendant's residence and electronic devices. They are not being offered for admission. They are included on the exhibit list to refresh memory if needed. |
| 627 | **Exhibit 627** is not being offered for admission. It is on the exhibit list to refresh memory if needed. |

The defendant also generally objects to the admission of written reports. The law enforcement reports and expert reports on the exhibit list were included to be available to refresh memory if needed and will not be offered for admission.

Defendant also objects to any witness that the United States will call to account for a .223 bullet fired by defendant, and which lodged in a school window after he opened fire on the Task Force members. The school and therefore, the bullet's path, can be readily viewed from the defendant's bedroom window. This is highly probative evidence of murder and attempted murder because the bullet's path to the school shows that the bullet passed through the side yard just outside defendant's bedroom window where the Task Force members were standing. Put another way, the path of this bullet from defendant's bedroom to the school shows that the Task Force members were standing in defendant's field of fire.

Moreover, the evidence that defendant's bullet hit the school is part of the story of defendant's crimes. Without this evidence, the jury will be left without an account of all of the bullets fired by defendant.

1       Defendant also believes this is information that he wants the jury to hear. Defendant's expert R.T. Wyant included the trajectory of defendant's .223 hitting the school in the defense trajectory report.

       A CD of all of the above exhibits will be provided for the Court's review.

       For all the foregoing reasons defendant's objections to the United States witnesses and exhibits should be overruled.

       Respectfully submitted this 11th day of September 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Jane L. Westby*

SARAH B. HOUSTON
JANE L. WESTBY
Assistant U.S. Attorneys

Copy of the foregoing served electronically or by other means this 11th day of September 2023, to:

Brad D. Levenson,
Christopher P. Frey
Theresa Michelle Duncan
Martin L. Novillo
Catherine Shively Berry, Esq.